**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**GINA RAE MASSIE,**

      **Plaintiff,**

v.                               **Case No.: 3:20-cv-00545**

**KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and Defendant's brief requesting judgment in her favor. (ECF Nos. 17, 18, 20).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 17); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 20); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I.    Procedural History

In December 2017, Plaintiff Gina Rae Massie ("Claimant") filed an application for DIB, alleging a disability onset date of June 15, 2017 due to "back problems, asthma, COPD, diabetes, and high cholesterol." (Tr. at 145-46, 163). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 10). Claimant subsequently filed a request for an administrative hearing, which was held on August 5, 2019 before the Honorable Melinda Wells, Administrative Law Judge (the "ALJ"). (Tr. at 27-50). On October 16, 2019, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 7-20). The ALJ's decision became the final decision of the Commissioner on June 18, 2020 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13). Thereafter, Claimant filed a Motion for Judgment on the Pleadings and Brief in Support, (ECF Nos. 17, 18), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 20). The time period within which Claimant could file a reply to the Commissioner's brief expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 61 years old on her alleged disability onset date and 63 years old on

her date last insured. (Tr. at 10, 145). She completed high school, communicates in English, and previously worked as a fundraiser and gift wrapper/office clerk. (Tr. at 48, 162, 164).

III.    **Summary of the ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the

performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the

4

evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through September 30, 2018. (Tr. at 12, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from her alleged onset date on June 15, 2017 through her date last insured. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following medically determinable impairments: obesity, chronic obstructive pulmonary disease (COPD), diabetes, hypertension, diverticulitis, and degenerative changes of the lumbar spine. (Tr. at 12, Finding No. 3). The ALJ also considered Claimant's migraine headaches, anxiety, and depression, but the ALJ concluded that the impairments were not medically

determinable. (Tr. at 12). The ALJ found that through her date last insured Claimant did not have any impairment or combination of impairments that significantly limited her ability to perform basic work activities and her medically determinable impairments were thus non-severe. (Tr. at 12-16, Finding No. 4). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act and was not entitled to benefits. (Tr. at 16, Finding No. 5).

## IV.    Claimant's Challenges to the Commissioner's Decision

Claimant asserts three challenges to the Commissioner's decision. She contends that the ALJ erred in finding that certain impairments were non-severe, failed to develop the evidence concerning her impairments, and did not consider whether her combination of impairments satisfied the Listing. (ECF No. 18 at 5-14). In response to Claimant's challenges, the Commissioner contends that substantial evidence supports the ALJ's finding that Claimant did not have a severe impairment or combination of impairments that would significantly limit her ability to perform basic work activities. (ECF No. 20 at 7-12).

## V.    Relevant Medical History

The undersigned has reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### A. Treatment Records

Robert S. Nease, D.C., treated Claimant at Davis Chiropractic from February 2017 through June 2019. Dr. Nease consistently recorded examination findings that included subluxation, hypertonicity, and/or splinting. (Tr. at 363-73, 375-94, 452-54, 687-89, 691-92, 694-98, 700, 702, 704-06, 708-10, 712-15). He diagnosed Claimant with segmental/somatic dysfunction, intervertebral disc degeneration/displacement, and

6

radiculopathy. (*Id.*).

On June 23, 2017, Claimant presented to Teresa Twohig, C-FNP, at Cabell Huntington Hospital Family Practice due to shortness of breath and fatigue. (Tr. at 311). Nurse Twohig diagnosed Claimant with uncontrolled diabetes, noting that Claimant's non-fasting blood sugar was 406 mg/dL, which was too high even considering that Claimant just ate a large meal. (Tr. at 313). Nurse Twohig instructed Claimant that her elevated blood sugar could make her feel weak. (*Id.*). Claimant was taking metformin, and Nurse Twohig prescribed blood glucose test strips and lancets. (*Id.*). Nurse Twohig further diagnosed Claimant with asthma and prescribed an albuterol inhaler. (Tr. at 313). Claimant's extensive list of current medications also included naproxen, a statin, and Lexapro. (Tr. at 312).

A lumbar MRI scan was performed on July 26, 2017 due to Claimant's complaints of chronic back pain and weakness in her lower extremities. The interpreting physician diagnosed Claimant with degenerative disc disease and facet osteoarthritis superimposed on scoliosis. (Tr. at 248). Claimant had moderate narrowing of the central canal at L3-4 and L4-5 and relatively mild foraminal stenosis, which was the most significant at L3-4. (*Id.*). Claimant was further diagnosed with symptomatic cholelithiasis with chronic cholecystitis. (Tr. at 268). She had her gallbladder removed laparoscopically on September 1, 2017 and the surgeon performed a cholangiogram. (Tr. at 268-69).

On December 4, 2017, Claimant complained of dyspnea and upper respiratory symptoms to Matthew Harris, M.D., at Cabell Huntington Hospital Family Practice. (Tr. at 300). She reported fatigue over the past six months. (*Id.*). On examination, Claimant's respiratory effort and breath sounds were abnormal. (Tr. at 302). Dr. Harris diagnosed Claimant with bronchitis, COPD, dyspnea, wheezing, fatigue, hypertension, diabetes, and

dyslipidemia. (Tr. at 302-03). He prescribed Augmentin and prednisone. (*Id*.). Claimant continued to take naproxen, Lexapro, and metformin and use an albuterol inhaler, and she was additionally prescribed Neurontin and Norco. (Tr. at 301).

On April 24, 2018, Claimant was evaluated in the St. Mary's Medical Center Emergency Room for shortness of breath after she ran out of her inhalers. (Tr. at 480, 483). Claimant's lung sounds were diminished with slight wheezes. (Tr. at 485). She was admitted to the hospital for exacerbation of COPD and treated with steroids and antibiotics. (Tr. at 480, 492). Claimant responded well to treatment and was discharged on April 27, 2018. (Tr. at 480). Her discharge diagnoses included depression. (*Id*.). In addition, Claimant's hemoglobin A1c was 8.5 and her blood glucose was uncontrolled due to steroids. (*Id*.). She was given insulin and the steroids were tapered. (*Id*.). She was advised to continue checking her blood sugar at home and taking metformin. (*Id*.).

Claimant followed up with Dr. Harris on May 1, 2018. Dr. Harris noted that Claimant's respiratory effort and auscultation of lungs were abnormal on examination. (Tr. at 525). He diagnosed Claimant with fatty liver, diabetes with other neurological complication without long-term current use of insulin, and exacerbation of COPD. (*Id*.). Claimant continued to take Lexapro, metformin, and a statin. (Tr. at 524). On May 30, 2018 Claimant told Nurse Twohig that she felt weak and short of breath. (Tr. at 526). Nurse Twohig noted that Claimant's diabetes was still uncontrolled, and it was poorly controlled even before Claimant was given steroids in the hospital. (Tr. at 526). Claimant's blood glucose was 600 mg/dL in the hospital and brought down to 400 mg/dL, but her readings remained higher than before her hospital admission. (*Id*.). Claimant was taking metformin, but she shared with Nurse Twohig that she could not afford Bydureon. (*Id*.). Claimant was using Advair and Proventil for shortness of breath, but she remained

8

symptomatic. (Tr. at 526). Claimant reported that she was so weak that she could not walk from one room to the next, and she could not walk from the car without her husband helping her. (*Id.*). Nurse Twohig diagnosed Claimant with diabetes, chronic fatigue, and impaired mobility and endurance. (Tr. at 529).

On June 7, 2018, Claimant told Dr. Harris that she was "feeling some better, and her blood glucose readings were less than 200 mg/dL. (Tr. at 531). Dr. Harris diagnosed Claimant with chronic fatigue, exacerbation of COPD, diabetes mellitus with neurological complication, fatty liver, and impaired mobility and endurance. (Tr. at 531-32). Claimant's medications included Lexapro, metformin, an albuterol inhaler, a statin, and a Trelegy inhaler. (Tr. at 533). Claimant established care with Ashley Zawodniak, D.O., on November 2, 2018. Dr. Zawodniak diagnosed Claimant with type 2 diabetes mellitus with other neurological complication, moderate COPD, and hyperlipidemia. (Tr. at 651). Claimant was prescribed glimepiride because metformin caused fecal incontinence. (Tr. at 651). She also continued to take a statin for hyperlipidemia, use a Trelegy inhaler for COPD, and take Lexapro for anxiety/depression. (Tr. at 652).

### B. Evaluation and Opinion Evidence

On January 5, 2018, Dr. Nease completed an RFC form, opining that Claimant could lift no more than 20 pounds and had limited ability to bend, stoop, or climb. (Tr. at 359). He listed that Claimant's diagnoses included lumbar, sacral, pelvic, and thoracic segmental dysfunction; lumbar radiculopathy; lumbar panniculitis; back muscle spasm; and low back pain. (*Id.*). Dr. Nease further recorded his findings of decreased flexion, extension, rotation, and side bending; antalgic gait; and decreased patellar and Achilles' tendon reflex. (Tr. at 361). Dr. Nease noted that Claimant was using a cane at her most recent visit. (*Id.*).

9

On April 16, 2018, state agency physician Amy Wirts, M.D., reviewed the record and concluded that the medical evidence was insufficient to provide an RFC assessment before Claimant's date last insured. (Tr. at 57). However, Dr. Wirts found that Claimant's major joint dysfunction, asthma, COPD, and hyperlipidemia were severe impairments. (Tr. at 58). Palle Reddy, M.D., affirmed Dr. Wirts's findings on July 3, 2018. (Tr. at 67-68).

On June 5, 2018, Dr. Harris completed an RFC form, stating that Claimant could frequently and occasionally lift and carry less than 10 pounds; stand and/or walk less than two hours; and sit for less than two hours in an eight-hour day. (Tr. at 514). Dr. Harris opined that Claimant had limited ability to push and pull with her upper and lower extremities; could occasionally climb ramps and stairs, balance, and stoop; never climb ladders/ropes/scaffolds, kneel, crouch, or crawl. (*Id.*). He assessed that Claimant's ability to reach in all directions and handle was limited, and she should avoid concentrated exposure to extreme cold and even moderate exposure to extreme heat. (*Id.*). Dr. Harris asserted that, upon review of Claimant's medical records for social security disability, Claimant had been disabled since June 2017. (*Id.*).

Dr. Nease completed another RFC form on September 19, 2018. He assessed that Claimant could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk less than two hours; sit less than two hours; and must switch positions after 30 minutes of standing and one hour of sitting. (Tr. at 543). Further, Dr. Nease opined that Claimant had limited ability to push and/or pull with her lower extremities. (*Id.*).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on August 5, 2019 that she could not work because she had no strength and was exhausted, her back hurt, and "one

thing after another wrong with [her]." (Tr. at 33). She reportedly suffered pain in her right lower back on almost a daily basis, sometimes with sciatica, and her lungs sometimes felt raw or hurt. (Tr. at 33, 36, 43). She used inhalers every day and sat down when it was difficult to breathe. (Tr. at 44-45). Heat exacerbated her breathing condition. (Tr. at 36). Claimant further testified that she took medicine for depression and anxiety, and her diabetes was intermittently uncontrolled. (Tr. at 34). Her activities included taking a lot of naps, watching television, fixing something to eat, making her husband's lunch three times per week, doing laundry, going to the doctor, driving, and going out to eat. (Tr. at 31, 37-38).

## VI.    **Scope of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence

exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

Claimant's challenges concern the ALJ's step two analysis, duty to develop the record, and consideration of her impairments in combination. Each argument is discussed below, in turn.

### A. *Non-Severe Impairments*

Claimant contends that the ALJ erred in finding that some of her impairments were non-severe. At the second step of the sequential evaluation, the ALJ determines whether a claimant has medically determinable impairments, and, if so, whether such impairments are severe within the meaning of the regulation. 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source," and the SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* at § 404.1521. As section DI 24501.020 of the SSA's Program Operations Manual System (POMS) explains, "[o]bjective medical evidence means signs, laboratory findings, or both." The term "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that are observable, apart from the claimant's statements (description of symptoms)," and the "[s]igns must be shown by medically acceptable clinical diagnostic techniques." POMS DI 24501.020. "Laboratory findings" are defined as "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id.* Finally, "[d]iagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and

electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.*

A medically determinable impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1522(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). The impairment must also meet the 12-month duration requirement, meaning that, unless the impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Courts often find that an error at step two is harmless when the ALJ found at least one severe impairment, proceeded with the sequential evaluation, and considered the effect of the challenged impairment(s) at subsequent steps of the analysis. *Cook v. Colvin*, No. 2:15-CV-07181, 2016 WL 5661348, at *9 (S.D.W. Va. Sept. 29, 2016) (collecting cases).

In this matter, the ALJ concluded that Claimant's obesity, COPD, diabetes, hypertension, diverticulitis, and degenerative changes of the lumbar spine were medically determinable impairments; Claimant's migraine headaches, depression, and anxiety were not medically determinable impairments; and Claimant did not have any impairments or combinations of impairments that were severe. (Tr. at 12-16). Finding no severe

13

impairments, the ALJ did not proceed with the sequential evaluation and concluded that Claimant was not disabled under the Social Security Act. (Tr. at 16).

Claimant contends that the medical evidence demonstrates that her following conditions were severe impairments: chronic low back pain, leg weakness, scoliosis, facet osteoarthritis superimposed on scoliosis, intervertebral disc degeneration of the lumbosacral area causing severe back pain, lumbosacral radiculopathy, bulging/slipped discs in the lumbar area, cholelithiasis with chronic cholecystitis, shortness of breath caused by asthma, dyslipidemia, chronic fatigue, anxiety, depression, and diabetes. (ECF No. 18 at 6, 12). With the exception of Claimant's diabetes, the ALJ did not find any of the foregoing impairments to be medically determinable impairments. The ALJ did not discuss most of the impairments.

### 1.  Back Impairments, weakness, and radiculopathy

The ALJ found that Claimant's degenerative changes of the lumbar spine was a medically determinable impairment, but the impairment was non-severe. (Tr. at 12-16). However, the ALJ did not articulate any step two findings regarding Claimant's arthritis, scoliosis, or radiculopathy, which frustrates meaningful review of her decision respecting those impairments. (*Id.*). For instance, the ALJ cited that Claimant's July 2017 MRI revealed lumbar degenerative disc disease and facet osteoarthritis superimposed on scoliosis. (Tr. at 14). However, the ALJ only considered Claimant's lumbar degenerative disc disease at step two. It is unclear why the ALJ did not determine that Claimant's facet osteoarthritis superimposed on scoliosis was not a medically determinable impairment despite the MRI finding. Similarly, Claimant was consistently diagnosed with radiculopathy from February 2017 through June 2019, but the ALJ did not evaluate whether it was a medically determinable impairment. (Tr. at 363-94, 452-54, 687-716).

Claimant's chiropractor also diagnosed her with and treated her for bulging/slipped lumbar discs and chronic back pain. (Tr. at 543). The ALJ should have considered whether those conditions were medically determinable impairments, and, if so, whether they were severe.

The undersigned recognizes that the ALJ may ultimately determine that Claimant's above conditions were non-severe for the same reason that the ALJ found that Claimant's degenerative changes of the lumbar spine were non-severe. The ALJ mentioned Claimant's normal gait, station, coordination of body movements, and grip strength; lack of gross focal deficits; intact strength and sensation; and the fact that she availed herself of treatment with a chiropractor, but did not consult with a specialist, and testified that she laid down or used over the counter medication for pain relief. (Tr. at 14). However, the Court cannot make that assumption. It is unclear if the ALJ even considered Claimant's facet osteoarthritis, scoliosis, or radiculopathy because she did not evaluate them at step two or proceed with the sequential evaluation.

The Commissioner emphasizes that a diagnosis, without more, is insufficient to establish disability, and the impairment must be accompanied by functional loss. However, the Commissioner substitutes *post hoc* reasoning for the ALJ's failure to properly consider Claimant's impairments at step two. The second step of the sequential evaluation is merely a *de minimis* screening device to dispose of groundless claims. *Felton–Miller v. Astrue*, 459 Fed. Appx. 226, 230 (4th Cir. 2011). Here, the ALJ did not evaluate whether many of Claimant's impairments were medically determinable, despite clear diagnoses and treatment, thus the ALJ did not proceed to consider whether the impairments had more than a minimal effect on Claimant's ability to perform basic-work activities. The Court cannot evaluate whether substantial evidence supports the ALJ's

step two finding because it is devoid of adequate analysis. Based on the medical record, the ALJ should have considered and made findings regarding Claimant's osteoarthritis, scoliosis, and radiculopathy at step two of the sequential evaluation. The error is not harmless because the ALJ ended the sequential evaluation at step two and did not proceed to consider the effects of the impairments later in the decision.

### 2. Cholelithiasis with chronic cholecystitis

Claimant underwent gallbladder removal surgery and cholangiogram on September 1, 2017 due to cholelithiasis with chronic cholecystitis. (Tr. at 268-69). Given those medical findings, the ALJ should have considered those impairments at step two of the sequential evaluation, but she did not consider them at all in her decision.

### 3. Shortness of breath caused by asthma

Regarding respiratory complaints, the ALJ discussed that Claimant's respiratory effort was abnormal in December 2017, and her chest x-ray demonstrated that she had bronchitis. (Tr. at 14). The ALJ noted that Claimant was prescribed medication without any scheduled follow up. (*Id*.). The ALJ also considered that Claimant was briefly admitted to the hospital in April 2018 due to exacerbation of COPD, and she quickly improved with treatment. (*Id*.). Ultimately, the ALJ found that Claimant's COPD was a medically determinable impairment, but it was non-severe. (Tr. at 12-13). The ALJ did not discuss any other respiratory impairments.

Claimant's primary care provider prescribed an albuterol inhaler for asthma on June 23, 2017, shortly after her alleged onset date. (Tr. at 313). Claimant complained of shortness of breath to Dr. Harris in December 2017, and she presented to the emergency room in April 2018, complaining of shortness of breath after she ran out of her inhalers. (Tr. at 300, 480, 483, 492). Although Claimant's breathing impairment was mostly

attributed to exacerbation of COPD, she was diagnosed with and treated for asthma during the relevant period. The ALJ erred in failing to consider Claimant's asthma at step two.

### 4. Dyslipidemia

On December 4, 2017, Dr. Harris diagnosed Claimant with dyslipidemia, noting that Claimant suffered from the condition since September 9, 2015. (Tr. at 300, 303). Claimant required medication for dyslipidemia throughout the relevant period. (Tr. at 312, 524, 533, 652). The ALJ erred in not assessing whether Claimant's dyslipidemia was a medically determinable impairment, and, if so, whether it was severe.

### 5. Chronic fatigue

Claimant was diagnosed with chronic fatigue several times during the relevant period. (Tr. at 303, 529, 535). However, the ALJ did articulate whether it was a medically determinable impairment at step two. The ALJ noted Claimant's allegations of fatigue and acknowledged that, in cases of obesity, fatigue may affect the person's physical and mental ability to sustain work activity, particularly when combined with sleep apnea, (Tr. at 14, 15). Nevertheless, the ALJ did not explicate whether Claimant's diagnosed condition of chronic fatigue was a medically determinable impairment and, if so, whether it more than minimally impacted her ability to perform work activities. While the ALJ found that Claimant's physical examinations documented minimal abnormalities and the record as a whole did not establish that Claimant suffered from any severe impairments, (Tr. at 16), it is unclear whether the ALJ adequately considered Claimant's chronic fatigue in making that finding. The ALJ should have articulated her step two conclusions regarding Claimant's chronic fatigue.

### 6. Anxiety and depression

The ALJ included the boilerplate statement that medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, did not show the existence of medical impairments, which resulted from physical or psychological abnormalities that would reasonably be expected to produce depression or anxiety. (Tr. at 12). On that basis, the ALJ found that Claimant's anxiety and depression were not medically determinable. (*Id.*). The Commissioner asserts that Claimant's mental impairments were not disabling because she testified that medication helped her anxiety and depression; she never received specialized mental health treatment; she denied symptoms at certain appointments; and she consistently had normal psychological examinations. (ECF No. 20 at 9). While the Court might agree with that reasoning, the problem is that the ALJ did not provide any of that explanation or cite to any of that evidence. Further, the Commissioner underappreciates the minimal burden required at step two. Because the ALJ provided no substantive analysis of Claimant's mental impairments, the Court cannot discern how the ALJ reconciled the fact that Claimant was diagnosed with mental conditions and prescribed psychiatric medications throughout the relevant period with the ALJ's step two finding that Claimant's anxiety and depression were non-medically determinable impairments. (Tr. at 301, 312, 524, 533). The ALJ erred in not providing sufficient analysis or support for her step two finding regarding Claimant's mental impairments.

### 7. Diabetes

The ALJ found that Claimant's diabetes was a medically determinable impairment, but it was non-severe. (Tr. at 12-13). She acknowledged that Claimant was diagnosed with diabetes and had elevated blood sugar on occasion. (Tr. at 14). The ALJ stated that

Claimant was educated to eat properly and check her blood sugar regularly, and she was prescribed medication to lower her blood sugar, but she never filled the prescription. (Tr. at 14-15). The ALJ concluded that there was no evidence of end-organ complications related to diabetes. (Tr. at 15). However, the ALJ's analysis does not fairly reflect the evidence. Claimant's blood sugar was uncontrolled in June 2017. (Tr. at 313). Furthermore, Claimant's blood glucose was uncontrolled in April and May 2018, although she was taking metformin. (Tr. at 480, 526). The ALJ recounted that Claimant was prescribed medication and she did not fill the prescription. (Tr. at 15). To the contrary, Claimant was taking medication (metformin), and she explained to her provider that she could not afford Bydureon. (Tr. at 526). Claimant also required insulin in April 2018 because her blood sugars were extremely high due to the steroids used to treat her COPD. (Tr. at 480). Claimant took metformin throughout the relevant period. (Tr. at 480, 301, 312, 524, 526, 533). The ALJ did not properly consider the above evidence in the step two analysis.

For all of the above reasons, the undersigned **FINDS** that the ALJ's step two finding is not supported by substantial evidence. The ALJ's errors are not harmless, because the ALJ found that Claimant did not have any severe impairments and did not proceed with the sequential evaluation to consider any of the challenged impairments at subsequent steps of the analysis. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her step two finding.

### B. Duty to Develop the Record

Claimant also asserts that the ALJ failed to fulfill her duty to develop the evidence regarding her multiple impairments. (ECF No. 18 at 5). An "ALJ has a duty to explore all

relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Perry v. Astrue*, No. 3:10-CV-01248, 2011 WL 5006505, at *16 (S.D.W. Va. Oct. 20, 2011) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir.2001)); *Fuller v. Saul*, No. 3:19-CV-00174, 2020 WL 597596, at *5 (S.D.W. Va. Jan. 13, 2020), *report and recommendation adopted,* 2020 WL 597425 (S.D.W. Va. Feb. 6, 2020); *Savage v. Saul*, No. 3:20-CV-00482, 2021 WL 2168909, at *8 (S.D.W. Va. May 7, 2021), *report and recommendation adopted,* 2021 WL 2169514 (S.D.W. Va. May 27, 2021); *Lewanda Terriel S. v. Saul*, No. CV TMD 19-1146, 2020 WL 2794588, at *4 (D. Md. May 29, 2020).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul*, No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a

disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

In this case, Claimant does not identify any gaps in the record or further evidence the ALJ should have developed. Claimant's conclusory assertion that the ALJ failed to develop the record fails to articulate a viable challenge. S*ee, e.g., Nelson v. Saul*, No. 3:20-CV-00586, 2021 WL 1603812, at *8 n.3 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted*, 2021 WL 1601747 (S.D.W. Va. Apr. 23, 2021) (discussing that a claimant waives a challenge by raising it only in a conclusory fashion). Indeed, the Court should not be tasked with researching and constructing Claimant's arguments for her. Claimant fails to specify any deficiencies in the record. She mentions the VE's testimony that a person who is absent from work two or more days per month cannot perform any jobs. (ECF No. 18 at 10-11). However, Claimant does not explain how the VE's testimony relates to her challenge that the ALJ should have developed the record, and the ALJ did not rely on the VE's testimony in the decision because the ALJ ended the sequential evaluation at step two. Therefore, it is unclear how the VE's testimony is relevant.

Notwithstanding those issues, Claimant's argument that the ALJ failed to develop the record is unavailing. The record includes, *inter alia*, Claimant's medical records, hearing testimony, function reports, medical source statements, evaluations, and prior administrative findings. Claimant does not articulate any further inquiries that the ALJ

should have made or indicate what further evidence was necessary for the ALJ to render a decision on her disability application. Claimant lists pieces of medical evidence in her brief, yet she does not explain how any of it prompted further investigation.

Moreover, Claimant confirmed, by counsel, at her administrative hearing that the record was complete. (Tr. at 29-30). The ALJ explicitly asked Claimant's counsel if counsel reviewed the record with Claimant, and counsel answered affirmatively. (*Id.*). Counsel stated that Claimant did not have any objections to the exhibits in the file and did not know of any additional evidence that needed to be submitted. (Tr. at 30). Claimant very clearly had the opportunity to raise any issues concerning development of the record, but she declined to do so. For those reasons, the undersigned **FINDS** that the record was sufficiently developed for the ALJ to make an informed decision on Claimant's application for benefits.

### C. *Combination of Impairments*

In her final challenge to the Commissioner's decision, Claimant argues that the ALJ failed to consider whether her combination of impairments satisfied the Listing. (ECF No. 18 at 12-13). Claimant does not develop this argument in any manner, such as identifying any listings that her combination of impairments supposedly satisfied. She asserts that the ALJ overlooked the RFC assessments rendered by her treating providers, but she does not explain how that argument is relevant to her challenge that the ALJ did not consider whether her combination of impairments satisfied the Listing. As noted, the ALJ found that Claimant was disabled at step two of the sequential evaluation. She did not proceed to consider at step three whether Claimant's impairments met or medically equaled an impairment included in the Listing. *See* 20 C.F.R. §§ 404.1525. Therefore, the undersigned **FINDS** the Court cannot evaluate whether the ALJ properly considered

Claimant's combination of impairments at step three because the ALJ did not perform that analysis. On remand, the ALJ should evaluate Claimant's combination of impairments at step two of the sequential evaluation. If the evaluation proceeds, the ALJ should consider Claimant's impairments in combination at subsequent steps in accordance with the applicable law.

## VIII.  **<u>Recommendations for Disposition</u>**

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 17); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 20); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** August 19, 2021

Cheryl A. Eifert
United States Magistrate Judge

24